**AMERICAN OCEANS CAMPAIGN,**
et al., Plaintiffs,

v.

**William M. DALEY, et al., Defendants.**

No. 99–CV–982.

United States District Court,
District of Columbia.

Sept. 24, 2000.

Stephen Elston Roady, Eric A. Bilsky, Monica Burke Goldberg, Oceana, Inc., Washington, DC, for plaintiffs.

Charles C. Carson, Morrison & Foerster, LLP, McLean, VA, Anthony P. Hoang, Samuel D. Rauch, II, U.S. Department of Justice, Environment & Natural Resources Division, Jane P. Davenport, U.S. Department of Justice, Environmental Division, James Patrick Walsh, Richard Lee Cys, Davis, Wright, Tremaine, Washington, DC, for defendants.

### MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff environmental groups bring this action against William M. Daley in his capacity as Secretary of the Department of Commerce ("Secretary") as well as the National Oceanic and Atmospheric Administration ("NOAA") and the National Marine Fisheries Service ("NMFS"). The Texas Shrimp Association and Wilma Anderson (collectively, "Intervenor–Defendants") intervened in this case as Defendants.

This matter is before the Court on Plaintiffs' Motion for Summary Judgment Against the Federal Defendants [# 22], the Federal Defendants' Motion for Summary Judgment [# 27], Plaintiff's Motion for Summary Judgment Against the Intervenor–Defendants [# 30], and the Intervenor–Defendants' Motion for Summary Judgment [# 26]. Upon consideration of the motions, oppositions, replies, the arguments made at the motions hearing, and

the entire record herein, for the reasons discussed below, Plaintiffs' Motion for Summary Judgment Against the Federal Defendants is **granted in part and denied in part,** Plaintiffs' Motion for Summary Judgment Against the Intervenor–Defendants is **granted,** the Federal Defendants' motion is **granted in part and denied in part,** and the Intervenor–Defendants' motion is **denied.**

## I. Standard of Review

Initially, it must be remembered that the Court is bound by a highly deferential standard of review for agency action. Under the Administrative Procedure Act ("APA"), an agency's action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In making this finding, the Court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The Court may not substitute its judgment for that of the agency. *Id.* If the "agency's reasons and policy choices ... conform to 'certain minimal standards of rationality' ... the rule is reasonable and must be upheld", *Small Refiner Lead Phase–Down Task Force v. EPA,* 705 F.2d 506, 521 (D.C.Cir.1983) (citation omitted), even though the Court itself might have made different choices. This standard presumes the validity of agency action. *Ethyl Corp. v. EPA,* 541 F.2d 1, 34 (D.C.Cir.1976) (en banc), *cert. denied,* 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976).

■ Courts also give a high degree of deference to agency actions based on an evaluation of complex scientific data within the agency's technical expertise. *See Bal-* *timore Gas & Elec. Co. v. NRDC,* 462 U.S. 87, 103, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983); *NRDC v. EPA,* 824 F.2d 1211, 1216 (D.C.Cir.1987) (citing *NRDC v. EPA,* 812 F.2d 721, 725 (D.C.Cir.1987)) ("[I]t is not for the judicial branch to undertake comparative evaluations of conflicting scientific evidence.")

## II. Statutory Framework

The Fishery Conservation and Management Act ("FCMA", also known as the Magnuson–Stevens Act), enacted in 1976, 16 U.S.C. § 1801, *et seq.,* provides the basic statutory framework for the protection and management of the nation's marine fishery resources. The FCMA establishes eight Regional Fishery Management Councils, each of which has the authority and responsibility to govern conservation and management of the fisheries under its jurisdiction. 16 U.S.C. § 1852. The Councils perform this function by developing and implementing fishery management plans ("FMPs"). After a Council develops an FMP, the Secretary of Commerce, acting through NOAA and NMFS, evaluates the plans and determines whether they comply with the FCMA. Depending on his determination, he may approve, disapprove, or partially approve these plans. 16 U.S.C. § 1854.

The approval of the FMPs requires several steps: first, an immediate review of the FMP to ensure it is consistent with the FCMA; second, publication of the FMP in the Federal Register, followed by a 60–day comment period; and third, approval, disapproval, or partial approval of the FMP, by the Secretary within 30 days of the end of the comment period. The Secretary may refuse to approve an FMP recommended by a Council if it violates any of the ten National Standards established by the FCMA for FMPs. 16 U.S.C. § 1853(a)(1–10). The Councils may, once

an FMP has been approved, adopt amendments to the FMPs as conditions in the fisheries change, but approval of such amendments must undergo the same evaluation process.

In 1996, Congress passed the Sustainable Fisheries Act ("SFA"), which amended the FCMA. One of the main thrusts of the SFA was the long-term protection of essential fish habitat ("EFH"). The statute defines EFHs as "those waters and substrate necessary to fish for spawning, breeding, feeding or growth to maturity." 16 U.S.C. § 1802(10). The SFA required the Councils to submit amendments to their various FMPs (each Council may have several FMPs), which were to describe and identify EFHs (including adverse impacts on such EFHs), and consider actions to ensure the conservation and enhancement of those EFHs. 16 U.S.C. § 1855(b)(1)(A). The statute required the Councils to submit such EFH amendments [1] to the Secretary by October 1998. After receiving such amendments, the Secretary was required to subject them to the evaluation procedure that FMPs and their amendments are normally put through, and then approve, disapprove, or partially approve them.

## III. Factual Background[2]

On December 19, 1997, NMFS promulgated EFH regulations in an Interim Final Rule, as required by the FCMA; these regulations became effective January 20, 1998. The Environmental Assessment (EA) prepared for these regulations, pursuant to the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., noted the need for a long-term plan for the conservation and management of essential fish habitats ("EFH").

In August 1997, NMFS contracted with the American Fisheries Society to make a comprehensive literature survey of scientific reports addressing fishing impacts on habitat. The survey, called the Auster/Langton Study (the "Study"), reviewed 90 studies from around the world and concluded that 88 of those studies found some impacts resulting from fishing gear. The Study concluded, however, that the overall impact of fishing-related activities in North American waters is unknown despite research efforts spanning 80 years. NMFS provided the Auster/Langton Study to the Regional FMCs, and noted that the Study was only a starting point, not a replacement for the EFH assessments for which the FMCs were responsible.

Each of the five Regional Councils affected by the SFA submitted draft EFH amendments to NMFS for review and comments. In their final EFH amendments, all Councils identified some EFHs within each of their jurisdictions, yet none adopted measures that would restrict fishing gear in order to minimize adverse effects of fishing related activities on EFH.

### A. Gulf of Mexico Fishery Management Council (GMFMC)

The GMFMC prepared a Generic EFH Amendment to amend its seven FMPs for managed species in the Gulf of Mexico.

1. EFH amendments are nothing more than amendments to FMPs specifically addressing the issue of EFHs. EFH amendments are thus a type of FMP amendment, and the two terms will be used interchangeably.

2. Pursuant to Local Rule 7.1(h), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." The Court thus takes these facts from the parties' statements of material facts not in dispute. Furthermore, since this case is a review of an administrative agency's decision, the Court also relies on facts contained in the administrative record.

In a letter to NMFS dated February 3, 1997, the GMFMC noted that because of the *existing* measures it had already adopted to regulate fishing activities, the effect on EFHs from allowable gear was only minimally adverse. In response to this letter, several dissenting members of the GMFMC sent a letter to NMFS expressing their concern over the GMFMC's position, stating specifically that the GMFMC had not examined gear effects on habitat, and that the GMFMC's conclusions were fallacious.

The GMFMC submitted an outline of its first draft of the Generic EFH Amendment on June 24, 1997; this outline included a heading on adverse impacts from fishing-related activities. The first draft of the Generic EFH Amendment, submitted January 27, 1998, did not, however, contain any measures that would minimize adverse impacts on EFH. Under the subsection "Potential management options to minimize identified threats from fishing-related activities," the amendment stated that such options would be considered in future amendments.

The March 1998 draft of the Generic EFH Amendment completely removed the headings on fishing impacts on EFH; these sections were replaced by a two-page description of the effects of fishing-related activities on EFH. This description noted that little is known in the literature about specific gear effects on EFH in the Gulf of Mexico, and noted that management measures already in place were sufficient to protect the EFHs. The March draft also lacked any proposed management measures for protecting EFHs. The Council based its failure to submit EFH protection on the lack of information needed to analyze the effects of gear on EFHs, and the likely controversial nature of such measures. The draft deferred management measures to future amendments.

After NMFS reviewed the Generic EFH Amendment, it concluded that the fishing impacts section was inadequate and overlooked existing data that would have been informative. In comments submitted to GMFMC, NMFS also noted that the analysis section was too general in nature to be useful, failed to utilize existing scientific data, and failed to adequately address the requirements of the EFH regulations.

The GMFMC submitted its final version of the Generic EFH Amendment to NMFS in October 1998. This draft contained only a cursory discussion of the effects of three types of fishing gear on EFHs. The 60–day comment period on the Amendment ended January 8, 1999. On February 8, 1999, NMFS partially approved the Amendment. NMFS approved GMFMC's assessment of impacts on EFH of the three types of fishing gear that were addressed in the Amendment: trawls, recreational fishing gear, and traps/pots. NMFS also approved the section noting that no further action was necessary for protecting and conserving EFHs. NMFS noted that GMFMC lacked the detailed scientific information necessary to determine the practicality of additional management measures. NMFS did not, however, approve GMFMC's failure to assess other types of gear on EFHs. NMFS also did not set a date by which GMFMC was to revise its EFH amendment to address NMFS' disapproval.

The GMFMC prepared an EA for the Generic EFH Amendment, which concluded that the Amendment did not significantly affect the quality of the human environment. The only two alternatives considered by NMFS were the status quo and approval of the Amendment.

## B. New England Fishery Management Council (NEFMC)

The NEFMC prepared an Omnibus EFH Amendment to amend its four FMPs

for managed species off the New England Coast.

In 1997, the NEFMC created an EFH Technical Team to prepare its EFH Amendment. In a March 23, 1998, memo, the Technical Team stated that it was breaking the process down into phases: in the first phase, EFHs would be identified and described; in the second phase, the effects of fishing activities on those EFHs would be assessed, as would any management measures necessary to minimize those impacts.

NMFS staff offered guidance to NEFMC's Technical Team, specifically as to what activities and gear NEFMC needed to assess, and what sorts of information had to be included in the EFH Amendment. The NEFMC submitted its EFH Amendment to NMFS on October 7, 1998. The Amendment contained no assessment of fishing gear impacts on EFHs. The 15–page discussion of fishing gear contained minimal discussion of the likely impacts of the various types of gear considered on the EFHs; the discussion primarily emphasized the lack of information on the specific effects of any specific gear on any particular habitat or species. The Amendment discussed how existing management measures affected EFHs, but did not consider any new measures that could be taken. The EFH Amendment's conclusion section stated that existing and recently proposed measures met the standards of the SFA and the FCMA.

NMFS prepared an EA for NEFMC's EFH Amendment. The section on environmental impacts of the proposed measures was only one paragraph long, and essentially discussed currently existing management measures. The EA addressed three options: the status quo, the EFH Amendment, and a total closure of the habitat area of particular concern (HAPC) to all fishing gear. The EA lacked any discussion of the long-term impacts of any of these options. The Secretary determined that no significant environmental impact would arise from the EFH Amendment, and approved the NEFMC's Omnibus EFH Amendment after the notice-and-comment period.

## C. Caribbean Fishery Management Council (CFMC)

The CFMC prepared an EFH Generic Amendment to amend the existing FMPs for managed species in the Caribbean.

The CFMC was informed at a public meeting of the possible effects of net fishing on coral reefs. The CFMC identified various methods to minimize this impact, but included them in the EFH Amendment only as "conservative recommendations", rather than as required management measures. The Council's reasoning was that little information was available on the practicality of management measures and on the adverse impacts of fishing related activities, and that previous efforts were sufficient to protect the EFHs.

The CFMC submitted its final EFH Amendment to NMFS in October 1998. The 60–day comment period on this Amendment ended January 19, 1999. On February 18, 1999, NMFS approved the CFMC's Amendment, noting that any weakness in the Amendment was due to the lack of scientific information on Caribbean species and ecosystems. NMFS did not, however, give the CFMC a specific date by which it should propose more concrete management measures for the protection of the EFHs identified.

NMFS prepared an EA on the CFMC's EFH Amendment, and found that no significant impact would result from the Amendment. The only two options considered were the status quo and adoption of the EFH Amendment.

## D. Pacific Fishery Management Council (PFMC)

From the outset, the PFMC relied heavily on NMFS for necessary material related to the definition of EFHs and potential impacts to those EFHs. Accordingly, in February 1997, NMFS prepared a draft EFH recommendations memo for fishing impacts in the groundfish fishery. In an NMFS meeting discussing the memo, a representative from the Environmental Protection Agency noted that the Council had sufficient information available to it to prepare an assessment of the impact of fishing-related activities on this area, even though little of that information was specific to Pacific Coast groundfish EFHs. In subsequent meetings, the NMFS Technical Team discussed specific management measures to minimize the adverse effects of fishing on that EFH.

In a second draft of the proposed recommendations, dated March 17, 1998, NMFS included a draft discussion of fishing impacts, and recommendations for actions the PFMC should take. In June 1998, NMFS submitted its final recommendations to the PFMC. The recommendations concluded that significant impacts to EFHs might occur from fishing in the areas within PFMC's jurisdiction, but that PFMC would encounter difficulty in proceeding because of the lack of scientific information. The discussion also noted the existing and growing body of research on fishing gear that should inform PFMC's actions. NMFS recommended that PFMC create gear performance standards to assess gear impacts on habitat.

The PFMC adopted NMFS' recommendations for its EFH Amendment, but failed to act upon NMFS' recommendations to implement specific measures. The PFMC's reasoning for not adopting any measures to protect EFHs was that there was virtually no information connecting fishing gear or activities to destruction of EFHs within its jurisdiction, nor was there information on the efficacy of methods to reduce any adverse effects. Despite the fact that the PFMC's Amendment contained no measures to reduce the adverse effects of fishing, NMFS approved the EFH provisions of PFMC's Amendment.

NMFS prepared an EA on PFMC's Amendment. The only two alternatives analyzed were the status quo, and the Amendment. The EA summarizes the potential impacts of fishing gear on EFH, but contains no long-term or cumulative analysis of the impacts of such gear on EFHs.

## E. North Pacific Fishery Management Council (NPFMC)

The NPFMC prepared two EFH Amendments, amending two of its FMPs for managed species in the Bering Sea and Aleutian Islands, and in the Gulf of Alaska.

The NPFMC decided early on to defer consideration of fishing gear assessment and management measures until completion of the identification of EFHs. The reasons for deferring this task was the controversy that would have resulted from regulation of fishing activities in those areas, and the lack of available information on EFHs within its jurisdiction. The final Amendment NPFMC submitted to NMFS contained very little analysis of measures that could be adopted to minimize the adverse effects of fishing on EFHs; the Amendment did, however, discuss how past efforts minimized the adverse effects of fishing related activities. NMFS approved NPFMC's EFH Amendment.

The EA performed on the Amendment contained only a brief analysis of the cumulative impact of fishing on EFHs. The EA contained discussion of past actions taken by NPFMC in protecting EFHs, but

did not discuss the environmental impact of any new measures that might be taken.

## IV. Analysis

Plaintiffs bring two causes of action against the Federal Defendants, each of which must be analyzed within the framework of the APA. Their first claim is that the Federal Defendants violated the FCMA in approving the EFH Amendments promulgated by the Councils. Their second claim is that the Federal Defendants violated the National Environmental Policy Act ("NEPA") by performing limited, inadequate Environmental Assessments ("EA") for each of the Amendments, rather than full Environmental Impact Statements ("EIS"), and by making findings of no significant impact ("FONSI") as to each of the Amendments. As to both claims, Plaintiffs argue that Defendants have violated the APA's prohibition against agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The Federal Defendants argue that Plaintiffs have no standing to bring the instant suit. The Intervenor–Defendants argue that this court cannot review Plaintiffs' FCMA claim, because the statute does not allow for judicial review of the EFH Amendments. Finally, the Federal Defendants argue that the requirements of the FCMA were met by each of the EFH Amendments in dispute (as least to the extent that those Amendments were approved), and that their decision to perform an EA and make a FONSI as to each Amendment complied with the requirements of NEPA. Since the questions of standing and reviewability are threshold questions, they will be addressed first.

### A. Do Plaintiffs Have Standing to Bring their Claims?

█ To prove standing, Plaintiffs must show: (1) they have suffered a con-crete, personal, and particularized injury in fact to a legally protected interest; (2) a causal connection between the injury and the action of the defendant, fairly traceable to the challenged action; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In making this showing, Plaintiffs cannot rest on mere conclusory allegations but must set forth specific facts, either through affidavits or other evidence, which for purposes of the summary judgment motion will be accepted as true. *Id.* at 561, 112 S.Ct. 2130. The injury prong of this test can be satisfied by alleging injury to aesthetic interests. *Animal Legal Defense Fund v. Glickman*, 154 F.3d 426, 432 (D.C.Cir.1998) (en banc) (hereinafter "*ALDF*").

The Federal Defendants argue that the allegations of harm found in the affidavits submitted by several of the Plaintiffs are merely vague and conclusory, thus failing to satisfy the *Lujan* requirement of a particularized injury in fact.

█ Injury to aesthetic interests satisfies the first prong of the *Lujan* test. As the D.C. Circuit Court of Appeals found in *ALDF*, 154 F.3d at 434, "the Supreme Court and [the District of Columbia] circuit have frequently recognized the injury in fact of plaintiffs who suffered aesthetic injury stemming from the condition and quality, or despoliation, of an environmental area that they used." Plaintiffs argue that they have suffered injuries to their aesthetic, environmental, and recreational interests, and submitted several affidavits to that effect from various individuals who either represent or are members of the several Plaintiff environmental groups. These individuals claim that NMFS' ac-

tions (or inactions) have harmed them because EFHs are not being properly protected from commercial fishermen. Many affiants list specific locations where they have fished or recreated (scuba diving, photographing reefs, etc.),[3] that they believe need to be better protected by more stringent EFH Amendments. The affiants state that without better protections, the EFHs will deteriorate, preventing them from enjoying their beauty. They also state that the deterioration of the EFHs will lead to very low fish populations, preventing them from recreationally fishing these waters.

Because these affidavits show particularized injuries to Plaintiffs' aesthetic, environmental, and recreational interests, Plaintiffs have standing to bring their claims.

## B. Does the FCMA Allow Judicial Review of Plaintiffs' Claims?

· Intervenor–Defendants (who are commercial fishers who would be affected by restrictions on fishing gear in EFHs), argue that the statute prevents Plaintiffs from obtaining judicial review in this case.[4] Their argument rests on 16 U.S.C. § 1855(f), which reads as follows:

(1) Regulations promulgated by the Secretary under this chapter and actions described in paragraph (2) shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date on which the regulations are pro-

mulgated or the action is published in the Federal Register, as applicable; except that—

(A) section 705 of such Title is not applicable, and

(B) the appropriate court shall only set aside any such regulation or action on a ground specified in section 706(2)(A), (B), (C), or (D) of such Title.

(2) The actions referred to in paragraph (1) are actions that are taken by the Secretary under regulations which implement a fishery management plan, including but not limited to actions that establish the date of closure of a fishery to commercial or recreational fishing.

Intervenor–Defendants argue that the statute clearly states that only regulations promulgated under this chapter are judicially reviewable. They further argue that since none of the EFH Amendments resulted in the promulgation of a formal regulation, there is no regulation which Plaintiffs can challenge. Intervenor–Defendants maintain that until an action is taken to implement the EFH Amendments, the Federal Defendants' actions are not reviewable by this Court.

Since all agency action is reviewable under the APA, the definition of "regulation" in the above-cited statute must be determined in light of that statute, unless the FCMA specifies a different definition, which it does not. Under the APA, the terms "rule" and "regulation" are used interchangeably. "Courts and Congress treat the terms 'regulation' and 'rule' as

---

3. For example, Peter Van Tuyn states that he has fished out of False Pass, Alaska, as well as in Ikatan Bay, south of the Aleutian Islands. Decl. Of Van Tuyn at ¶ 4. Kathryn Arbuthnott states that she has scuba dived coral reefs off Florida, from Key West to the Dry Tortugas, and off Puerto Rico (including reefs off Parguera, Mayaguez, and Desecheo). Decl. Of Arbuthnott at ¶¶ 2, 3.

4. The Federal Defendants stated at oral argument that their position on this issue is that the Secretary has taken reviewable action, as defined by the APA, and therefore this case is subject to judicial review.

interchangeable and synonymous. When we speak of an agency's 'regulation'—a term nowhere mentioned in the Administrative Procedure Act, 5 U.S.C. § 551 et seq.—we have in mind what the APA defines as a 'rule,' ..." *National Treasury Employees Union v. Weise,* 100 F.3d 157, 160 (D.C.Cir.1996).

■ The APA defines "rule" very broadly to include "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy," 5 U.S.C. § 551(4). Thus the Secretary's actions approving in full and approving in part the EFH Amendments in this case constitute "rules" under the APA, because the Secretary can only approve EFH Amendments after he has determined they are in compliance with the FCMA. This determination of compliance requires an interpretation of the FCMA, and thus is an action reviewable by this Court. Furthermore, the EFH Amendments apply generally to many fisheries, have future effect, are designed to interpret and prescribe law and policy, and thus fall under the definition of "rule" as that term is defined in the APA.

Intervenor–Defendants cite two cases in support of their argument, both of which are distinguishable. In *Cape Cod Commercial Hook Fishermen's Ass'n v. Daley,* 30 F.Supp.2d 111 (D.Mass.1998), one of the eight regional Councils issued experimental fishing permits after passage of the Sustainable Fisheries Act, which amended the FCMA and was codified under various sections of the FCMA. Plaintiffs in that case alleged that issuance of the permits violated the FCMA. The district court, relying on 16 U.S.C. § 1855(f)(1)(A) and (B), ruled that it had no jurisdiction to review the Council's issuance of experimental fishing permits under the FCMA, because the issuance of such permits was not a "regulation" or an action "approved" by the

Secretary. In this case, however, each of the EFH Amendments was affirmatively approved by the Secretary, and this approval constitutes a reviewable action under the APA and FCMA.

The other case Intervenor–Defendants rely on is *Southeastern Fisheries Ass'n v. Mosbacher,* 773 F.Supp. 435 (D.D.C.1991), which was decided before passage of the Sustainable Fisheries Act. Intervenor–Defendants rely on footnote 9 in this case, which reads, "[w]hile plaintiffs appear also to challenge the FMP itself, it is the regulations which implement the FMP, rather than the FMP itself, which are subject to judicial review." *Id.* at 439 n. 9. This footnote, however, is dicta, and in any event is not binding on this Court. Furthermore, it is unpersuasive given the broad definition of "rule" under the APA. *See National Treasury Employees Union,* 100 F.3d at 160.

## C. Were the Actions of the Federal Defendants "not in accordance with law" (the FCMA) and Therefore In Violation of the APA?

Plaintiffs argue that the Secretary violated the APA by approving the five Councils' EFH Amendments because those Amendments violated the FCMA. Defendants argue that the EFH Amendments complied with the statute and applicable regulations, and therefore the Secretary's approval conformed with the APA.

Review of the Secretary's action must be especially deferential, given the highly complicated scientific data that the agency must interpret. *See Baltimore Gas & Elec. Co.,* 462 U.S. at 103, 103 S.Ct. 2246. Where the agency decision turns on issues requiring the exercise of technical or scientific judgment, it is essential for judges to "look at the decision not as the chemist, biologist, or statistician that we are qualified neither by training nor experience to

be, but as a reviewing court exercising our narrowly defined duty of holding agencies to certain minimal standards of rationality." *Ethyl Corp.*, 541 F.2d at 36.

In approving, disapproving, or partially approving an amendment to an FMP, the Secretary must consider whether it complies with the ten "National Standards" for FMPs set forth in the FCMA, 16 U.S.C. § 1851(a)(1)–(10), and whether it complies with all other applicable laws. 16 U.S.C. § 1854(a)(1)(A). Congress granted the Secretary broad discretion to balance the ten National Standards in determining whether an FMP has complied with them. *Alliance Against IFQs v. Brown*, 84 F.3d 343, 350 (9th Cir.1996), *cert. denied*, 520 U.S. 1185, 117 S.Ct. 1467, 137 L.Ed.2d 681 (1997).

The Essential Fish Habitat Regulation, issued by the Secretary to guide the Councils in formulating EFH Amendments which comply with the National Standards, is very specific about what those Amendments should include. *See* 50 C.F.R. § 600.815. It describes how the Council should gather and organize data necessary for identifying EFH, 50 C.F.R. § 600.815(a)(2)(i), and warns that the Councils should strive to obtain data sufficient to describe each EFH with the highest level of detail. *Id.* The Regulation also directs the Councils to gather data for each managed species within a potential EFH regarding that species' current and historic stock size, geographic range, habitat requirements organized by life history stage, and the distribution, density, growth, mortality, and production of each species at each life history stage within all habitats occupied or formerly occupied. 50 C.F.R. § 600.815(a)(2)(i)(B).

The Regulation also describes the different levels of information that might be available and should be gathered in the process of identifying EFHs, 50 C.F.R. § 600.815(a)(2)(i)(C), and provides guidance as to how to identify EFHs given the level of information available with respect to a potential EFH. 50 C.F.R. § 600.815(a)(2)(ii)(A). The Regulation provides further guidance in identifying EFHs, depending on the status of the stock of fish, and the quantity and quality of habitats available to those fish. 50 C.F.R. § 600.815(a)(2)(ii).

With respect to the adverse effects of fishing activities, the Regulation provides guidance as to the types of adverse effects that should be protected against, the assessment of such effects that the Councils must undertake, and the considerations that the Councils should take into account in determining whether to take any actions to mitigate such adverse effects. 50 C.F.R. § 600.815(a)(3). The Regulation further instructs that the EFH Amendment must assess all potential adverse effects of all types of fishing equipment used in a specific EFH, and must pay particular attention to habitat areas of special concern. 50 C.F.R. § 600.815(a)(3)(ii). The Regulation suggests consideration of the following actions to mitigate adverse effects: fishing equipment restrictions, harvest limits, and total or partial closure of affected areas. 50 C.F.R. § 600.815(a)(4).

1. **Did the Secretary's Approval of the GMFMC's EFH Amendment Violate the APA Because It Was Not in Accordance With the FMCA?**

The Secretary gave partial approval to the GMFMC's Generic EFH Amendment. The following relevant aspects of the Amendment were approved: identification and description of EFHs, assessment of the impacts of three types of fishing gear (trawls, recreational fishing gear, and traps/pots), and the determination that no further action was necessary to protect

and conserve EFHs. The Secretary, however, disapproved the GMFMC's failure to assess other types of fishing gear on EFHs. In reaching his conclusion that the GMFMC's Generic EFH Amendment complied with the FCMA in all other respects, the Secretary noted that the GMFMC lacked the detailed scientific information necessary to determine the practicability of additional management measures.

Plaintiffs argue that the Secretary's approval of the Generic EFH Amendment did not comply with the FCMA because the Amendment's discussion of the effects of fishing activities on EFH is brief and cursory, because the discussion of the three types of gear analyzed was brief and inadequate, because the Amendment failed to consider other types of gear used in the relevant EFHs, and because the Amendment failed to consider and analyze options to minimize the adverse effects of fishing on EFHs.

Plaintiffs also argue that the fact that the Secretary failed to give the GMFMC a date certain by which to revise its EFH Amendment to correct its deficiencies entails the conclusion that the Secretary abused his discretion. The statute gives the GMFMC a "reasonable" amount of time to correct deficiencies. By not placing time limits on the GMFMC, Plaintiffs argue that the Secretary is essentially giving it an indefinite, and inherently unreasonable, amount of time in which to make its corrections.

Defendants concede that the Generic EFH Amendment failed to consider the effect of certain types of fishing gear on EFHs that it had identified, but note that this failure is why the Secretary did not grant complete approval to the Amendment. With respect to the adequacy of the analysis of the effects of fishing activities on EFHs, and specifically of the effects of the three types of gear analyzed, Defen-

dants argue that the discussion is sufficient, and is based on the best available scientific information. Finally, Defendants argue that the GMFMC adequately considered the best scientific information in determining that no additional measures were needed to mitigate the adverse effects of fishing on the EFHs, since existing fishing management measures sufficiently protected them.

■ Since neither the statute nor the regulation requires the Councils to affirmatively conduct research to better identify EFHs and the adverse effects of fishing on them, reliance on the best *available* scientific information is sufficient. *See* 50 C.F.R. § 600.815(a)(2)(i)(C) (describes types of information Councils should *gather* and *organize,* but does not require Councils to create new data); 50 C.F.R. § 600.815(a)(3)(ii) ("Councils should use the best scientific information available"); 50 C.F.R. § 600.815(a)(3)(iii) (Councils must adopt practical mitigating measures "if there is evidence that a fishing practice is having an identifiable adverse effect on EFH"); 16 U.S.C. § 1855(b)(1)(A); 16 U.S.C. § 1853(a)(7). While Plaintiffs would have preferred a more detailed analysis of the effects of fishing activities and of the three types of gear addressed, the Secretary did consider the relevant factors in determining that the analysis was adequate based on the best available scientific information, and thus the approval of the Amendment was reasonable and in accordance with law.

In addition, the Secretary's conclusion that the EFH Amendment did not need to adopt new measures to mitigate the adverse effects of fishing, since existing management measures sufficiently mitigated those effects, and since the GMFMC lacked evidence of the adverse effects of a particular fishing practice on EFHs, was reasonable. *See* 50 C.F.R.

§ 600.815(a)(3)(iii). While Defendants cannot simply rely on the fact that management efforts were undertaken *prior* to passage of the Sustainable Fisheries Act to show compliance with that Act, Defendants can look at such measures in analyzing whether *additional* ones are necessary to comply with the Act.

Finally, there is no merit to Plaintiffs' argument that the Secretary's failure to give the GMFMC a date certain by which to revise its Amendment to comply with the FCMA constitutes an abuse of discretion. In the first instance, what constitutes a "reasonable" amount of time within which the GMFMC may revise its Amendment is solely within the Secretary's discretion, given the absence of any statutory deadline. *Conservation Law Found. of New England, Inc. v. Franklin,* 989 F.2d 54, 60 (1st Cir.1993).

Consequently, because the Secretary's partial approval of the GMFMC's Generic EFH Amendment was reasonable, considered all the relevant factors under the FCMA, and was in accordance with that statute, Plaintiffs' motion shall be denied, and the Federal Defendants' motion granted, as to this claim.

**2. Did the Secretary's Approval of the NEFMC's EFH Amendment Violate the APA Because It Was Not In Accordance With the FMCA?**

The Secretary approved the NEFMC's Omnibus EFH Amendment, which, like the GMFMC's Amendment, considered the effects of fishing activities and gear on EFHs, but determined that no new management measures were necessary to mitigate any adverse effects. The NEFMC viewed the entire process as a two-step process, with the first step being the identification of EFHs, and the second step being the assessment of the adverse effects of fishing activities and gear, and the adoption of mitigating measures. Plaintiffs maintain that making this a two-step process violates the FCMA. They argue that the statute contemplates a unitary process in which the Amendment includes an assessment of the adverse effects of fishing and adoption of mitigating measures along with identification of EFHs. Plaintiffs also maintain that the NEFMC has postponed indefinitely completion of the task the FCMA requires, namely, assessment of adverse effects and adoption of mitigating measures; therefore, the Secretary's approval of the Amendment violates the FCMA and the APA.

Defendants argue that the NEFMC's Amendment does in fact contain an analysis of the adverse effects of fishing activities and gear on EFHs, and that the analysis is based on the best scientific evidence available to the NEFMC at that time. As with the GMFMC's Amendment, the fact that Plaintiffs would have preferred a more detailed analysis does not compel the conclusion that the Secretary's action was arbitrary and capricious. Defendants also argue that the NEFMC proposed Amendments to other FMPs, in the past and simultaneously with the EFH Amendment, that had the effect of sufficiently protecting the EFHs identified in the Amendment. Consequently, Defendants argue, there was no need for additional protective measures to be proposed.

■ For the same reasons that the Secretary's approval of the GMFMC's Amendment was reasonable, his approval of the NEFMC's Omnibus EFH Amendment was also reasonable. The Secretary approved the Amendment after considering whether it complied with the FCMA, given the best scientific information available to it at that time. It was also reasonable for the Secretary to conclude that the NEFMC did not need to adopt additional protective

measures,[5] given the measures already in place and the lack of available scientific evidence on the adverse effects of fishing gear. Consequently, because the Secretary's approval of the NEFMC's Omnibus EFH Amendment was reasonable, considered all the relevant factors under the FCMA, and was in accordance with that statute, Plaintiffs' motion shall be denied, and the Federal Defendants' motion granted, as to this claim.

### 3. Did the Secretary's Approval of the CFMC's EFH Amendment Violate the APA Because It Was Not In Accordance With the FMCA?

The Secretary approved the CFMC's EFH Generic Amendment, which identified EFHs in the Council's jurisdiction, and made several recommendations to minimize the possible impact of fishing gear on those EFHs. The CFMC did not adopt the Secretary's recommendations as management measures because it noted the lack of scientific information available to it on the adverse effects of fishing, and because it felt that existing management measures (which included restrictions on gear) were sufficient to protect the EFHs.

Plaintiffs argue that the Secretary's approval of the Amendment did not comply with the FCMA because the Amendment's discussion of the adverse effects of fishing gear was brief and inadequate, and because the CFMC only made "recommendations" to mitigate such effects, rather than adopting protective measures.

Defendants argue that the CFMC Amendment was in compliance with the statute because no further actions were needed to be taken in that region to protect EFHs. Defendants also argue that the CFMC had very little scientific information available to it on the impact of fishing gear, and that certain fishing practices and gear are not even used in those waters because of the makeup of the area—the EFHs in need of protection in this area are largely made up of coral reefs.

Defendants defend the adoption of recommendations for management measures because the CFMC did not believe that any fishing activities were actually affecting the coral reefs in the area. The only fishing gear that might affect the area is fishing nets, which may get entangled in the reefs and damage them. But Defendants point out that no protective measures were needed to mitigate this possible effect for two reasons: first, such measures would not have been practicable (as it is, fishermen have a disincentive to fish coral reefs, because repairing damaged fishing nets is costly); and second, no evidence existed to show that fishing nets were in fact damaging EFHs in that area. Finally, Defendants rely on the fact that management measures (such as equipment restrictions banning or regulating the use of potentially destructive fishing methods) were adopted in other FMPs which would have the effect of protecting the designated EFHs, and thus no further measures were necessary in the EFH Amendment.

■ The Court concludes that the Secretary's approval of the CFMC's EFH Generic Amendment was reasonable. The Secretary approved the Amendment after considering whether the CFMC's Amendment complied with the FCMA, given how little scientific information was available at

---

**5.** Plaintiffs are correct that the FCMA prohibits the two-step approach that the NEFMC adopted, where the EFHs are first identified, and protective measures assessed and adopted at a later date. The statute clearly indicates that both these steps were to be taken by the October 1998 deadline. As a practical matter, however, it made no difference that the NEFMC adopted this approach, given that they had very limited scientific information, and protective measures were already in place.

that time. It was also reasonable for the Secretary to conclude that the CFMC did not need to adopt additional protective measures, given the measures already in place and the lack of scientific evidence on the adverse effects of fishing gear available to the CFMC. Consequently, because the Secretary's approval of the CFMC's EFH Generic Amendment was reasonable, considered all the relevant factors under the FCMA, and was in accordance with that statute, Plaintiffs' motion shall be denied, and the Federal Defendants' motion granted, as to this claim.

### 4. Did the Secretary's Approval of the PFMC's EFH Amendment Violate the APA Because It Was Not In Accordance With the FMCA?

The Secretary approved the PFMC's EFH Amendment, which was largely based on recommendations made to the Council by NMFS. The primary difference between the recommendations made and the final Amendment approved was that the PFMC did not include any of NMFS' suggested measures for protecting the identified EFHs. The PFMC's reason for not adopting NMFS' suggested mitigating measures was the lack of information connecting fishing activities or gear to destruction of EFHs within its jurisdiction, and lack of information on the efficacy of methods to reduce any adverse effects. Plaintiffs argue that the Secretary's approval of the PFMC's Amendment did not comply with the FCMA because the Amendment failed to adopt NMFS' suggested mitigating measures, or any other mitigating measures, and failed to do so primarily because it was concerned with the controversy that would be created by such action. Defendants respond that the PFMC did in fact lack sufficient scientific evidence to take further measures, and that there were no EFHs that needed protection, because most of them were in any event inaccessible to fishermen.

The Court concludes that the Secretary's approval of the PFMC's EFH Amendment was reasonable. The Secretary approved the Amendment after considering whether it complied with the FCMA, given how little scientific information was available to it at that time. Even though NMFS had suggested some additional protective measures, it was reasonable for the Secretary to conclude that the PFMC did not need to adopt them, given the lack of scientific evidence available to the PFMC on the adverse effects of fishing gear on Pacific Coast EFHs. Consequently, because the Secretary's approval of the PFMC's EFH Amendment was reasonable, considered all the relevant factors under the FCMA, and was in accordance with that statute, Plaintiffs' motion shall be denied, and the Federal Defendants' motion granted, as to this claim.

### 5. Did the Secretary's Approval of the NPFMC's EFH Amendment Violate the APA Because It Was Not In Accordance With the FMCA?

The Secretary approved the NPFMC's two EFH Amendments, which modified its FMPs covering the Bering Sea/Aleutian Islands area, and the Gulf of Alaska. The Amendments did not adopt any new measures to mitigate the adverse effects of fishing on EFHs, because of the lack of available information on EFHs within its jurisdiction, because of the controversy that would have resulted from the adoption of new measures, and because it believed that existing measures sufficiently minimized the adverse effects of fishing activities on the relevant EFHs.

Plaintiffs argue that the Secretary did not comply with the FCMA in approving the Amendments, because it does not adequately assess the adverse effects of fishing activities and gear on the EFHs, and

because it completely failed to consider any measures that would protect EFHs from the adverse effects of fishing activities and gear.

Defendants respond that the Amendments in fact contain an extensive discussion of the adverse effects of fishing and gear on Alaskan waters. They argue that any deficiency is due to the lack of scientific studies specific to this region. This lack of information, Defendants argue, is also the reason that the NPFMC was unable to formulate appropriate protective measures. Finally, Defendants argue that actions taken prior to and simultaneously with the creation of the EFH Amendments sufficiently protected the identified EFHs from the adverse effects of fishing activities and gear.

■■■ The Court concludes that the Secretary's approval of the NPFMC's two EFH Amendments was reasonable. The Secretary approved the Amendments after considering whether the Amendments complied with the FCMA, given how little scientific information was available to the NPFMC at that time. It was also reasonable for the Secretary to conclude that the NPFMC did not need to adopt additional protective measures, given the lack of scientific evidence available to it, and the existing protective measures already in place. Consequently, because the Secretary's approval of the NPFMC's two EFH Amendments was reasonable, considered all the relevant factors under the FCMA, and was in accordance with that statute, Plaintiffs' motion shall be denied, and the Federal Defendants' motion granted, as to this claim.

**D. Were the Actions of the Federal Defendants "not in accordance with law" (NEPA) and Therefore In Violation of the APA?**

The purpose of NEPA is to establish a "broad national commitment to protecting and promoting environmental quality." *Robertson v. Methow Valley Citizens*, 490 U.S. 332, 348, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989). "Simply by focusing the agency's attention on the environmental consequences of a proposed project, NEPA ensures that important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise cast." *Id.* at 349, 109 S.Ct. 1835. To fulfill this policy, NEPA requires all federal agencies to prepare an environmental impact statement ("EIS") whenever they propose "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Regulations promulgated by the Council on Environmental Quality ("CEQ"), 40 C.F.R. §§ 1500–1508, provide the agencies guidance in their task of complying with NEPA. Additional information is provided for NMFS' compliance with NEPA in NOAA Administrative Order 216–6 ("AO 216–6").

The NEPA regulations, 40 C.F.R. § 1501.4, provide the following guidance to agencies who must decide whether they need to perform an EIS:

> In determining whether to prepare an environmental impact statement the Federal agency shall:
>
> (a) Determine under its procedures supplementing these regulations (described in § 1507.3) whether the proposal is one which:
>
>> (1) Normally requires an environmental impact statement, or
>>
>> (2) Normally does not require either an environmental impact statement or an environmental assessment (categorical exclusion).
>
> (b) If the proposed action is not covered by paragraph (a) of this section,

prepare an environmental assessment (§ 1508.9). The agency shall involve environmental agencies, applicants, and the public, to the extent practicable, in preparing assessments required by § 1508.9(a)(1).

(c) Based on the environmental assessment make its determination whether to prepare an environmental impact statement.

(d) Commence the scoping process (§ 1501.7), if the agency will prepare an environmental impact statement.

(e) Prepare a finding of no significant impact (§ 1508.13), if the agency determines on the basis of the environmental assessment not to prepare a statement.

. . .

An Environmental Assessment is defined by the regulations at 40 C.F.R. § 1508.9:

"Environmental Assessment":

(a) Means a concise public document for which a Federal agency is responsible that serves to:

(1) Briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact.

. . .

(b) Shall include brief discussions of the need for the proposal, of alternatives as required by sec. 102(2)(E), of the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted.

If an agency first prepares an EA, and after doing so determines that preparing a full EIS is unnecessary, the agency must prepare a finding of no significant impact ("FONSI"), setting forth the reasons why the actions will not have a significant impact on the environment. 40 C.F.R. §§ 1501.4, 1508.13.

The AO 216–6 provides further guidance for NMFS, and requires the preparation of an EIS for an FMP or an FMP Amendment (such as the EFH Amendments in this case) whenever the responsible program manager ("RPM") determines that significant beneficial or adverse impacts may reasonably be expected to result from the implementation of the FMP or FMP Amendment. AO 216–6, at § 6.11, A.R. HQ–1 at 24. This regulation specifically provides that when adverse impacts are possible, the RPM should consider the following five criteria in determining the appropriate course of action:

a. The proposed action may be reasonably expected to jeopardize the long-term productive capability of any stocks that may be affected by the action.

b. The proposed action may be reasonably expected to allow substantial damage to the ocean and coastal habitats.

c. The proposed action may be reasonably expected to have a substantial adverse impact on public health or safety.

d. The proposed action may be reasonably expected to affect adversely any endangered or threatened species or a marine mammal population.

e. The proposed action may be reasonably expected to result in cumulative adverse effects that could have a substantial effect on the target resource species or any related stocks that may be affected by the action. Two other factors to be considered in any determination of significance are controversy and socio-economic effects. Although no action should be deemed to be significant based solely on its controversial nature, this aspect should be used in weigh-

ing the decision on the proper type of analysis needed to ensure full compliance with NEPA. Socio-economic factors related to users of the resource should also be considered in determining controversy and significance. AO 216–6, at § 6.11, A.R. HQ–1 at 24.

The Administrative Order further provides that if none of these five criteria may be reasonably expected to occur, an EA may be prepared instead, in accordance with the requirements specified in the regulations promulgated by the CEQ. AO 216–6 at §§ 6.11, 6.05.a.2, A.R. HQ–1 at 19–20, 24.

The District of Columbia Circuit Court of Appeals has ruled that courts must consider four factors in evaluating the legal adequacy of an EA or a FONSI:

(1) whether the agency took a "hard look" at the problem;

(2) whether the agency identified the relevant areas of environmental concern;

(3) as to the problems studied and identified, whether the agency made a convincing case that the impact was insignificant; and

(4) if there was an impact of true significance, whether the agency convincingly established that changes in the project sufficiently reduced it to a minimum.

*Humane Soc'y of the U.S. v. Hodel,* 840 F.2d 45, 62 (D.C.Cir.1988). The Court also ruled that the role of the court "is simply to ensure that the agency took account of these factors and that its decision was not arbitrary and capricious." *Id.; Citizens Against Burlington, Inc. v. Busey,* 938 F.2d 190, 194 (D.C.Cir.1991), *cert. denied,* 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).

Plaintiffs make several arguments why the Federal Defendants violated NEPA. First, NMFS did not prepare full EISs, even though the EFH Amendments are sweeping in scope (covering large areas of water around the North American continent, and allowing fishing practices to continue even in areas designated as EFHs). Second, Plaintiffs argue that the very reasons Defendants give for not doing EISs actually highlight why they were necessary: proximity to ecologically critical areas, likelihood of controversy from the effects on the environment, highly uncertain or unknown risks, and the precedential nature of the decision. Third, Plaintiffs argue that none of the four factors outlined in *Humane Soc'y* have been adequately considered in this case, and thus each EA and FONSI is legally inadequate. Finally, Plaintiffs argue that NMFS violated NEPA by not considering any alternatives besides maintaining the status quo and accepting the EFH Amendments, when additional feasible alternatives that would better protect EFHs should have been considered.

Defendants argue that they did not need to, and in fact could not, consider additional alternatives besides the status quo and the EFH Amendments, because NEPA requires consideration only of feasible alternatives. Since the EAs were prepared in the context of the FCMA, which does not allow the Secretary to do anything besides approve, disapprove, or partially approve the Amendments, no other alternatives were, therefore, feasible. Defendants also argue that a full EIS was not required on any of the Amendments, since they took a hard look at each one, considered all the relevant factors, but determined that the risks or impacts were either unknown or insignificant. Finally, Defendants argue that their decision not to conduct a full EIS was reasonable, given how little scientific evidence is available on the adverse effects of fishing on EFHs.

The Court concludes, after reviewing the record, that each of the EAs prepared on the EFH Amendments in this case fails to comply with the requirements of NEPA, and the regulations promulgated by CEQ and NOAA. Several deficiencies appear in all five EAs. None of the EAs considered the five factors outlined in AO 216–6 in deciding whether an EIS was necessary. None included the relevant information required by 40 C.F.R. § 1508.9 in the EAs: there is simply not enough evidence or analysis in any EA to determine whether an EIS is necessary; all the EAs are couched in very general and vague terms, and spend more time *describing* the proposed alternative and the requirements of NEPA than they do actually *analyzing* the proposed alternative and complying with the requirements of NEPA.

Most significantly, none of the EAs discusses in any convincing or sufficient manner the requirements of 40 C.F.R. § 1508.9(b): they fail to consider all relevant and feasible alternatives, and fail to fully explain the environmental impact of the proposed action and alternatives. All the EAs discuss the environmental impacts of the proposed action and alternative(s) in vague and general terms, without discussing what the impact would be to the specific EFHs that the Amendments are intended to protect. Three of the EAs (the GMFMC's, CFMC's and the PFMC's) do not even consider any alternatives besides the status quo (which would violate the FCMA), and adoption of the Amendment.

Defendants' argument that no other alternatives could have been considered because the EAs were completed in the context of the FCMA, is without merit. The fact that the Secretary can only approve, disapprove, or partially approve the EFH Amendments submitted by a Council does not restrict steps he must take to comply with NEPA and therefore does not restrict the number of alternatives that must be considered under that statute. "While subsequent congressional action does not vitiate the need for an environmental impact statement or a discussion of alternatives (unless explicitly stated in the statute), such action does have a bearing on what is to be considered a reasonable alternative, and a reasonable discussion." *Sierra Club v. Adams,* 578 F.2d 389, 396 (D.C.Cir.1978). For example, if the Secretary disapproves a Council's EFH Amendment, he may, if the Council fails to act within a reasonable amount of time, prepare an FMP or FMP Amendment himself. 16 U.S.C. § 1854(c). Thus additional alternatives were available, other than simply adopting the Councils' Amendments. However, three of the EAs prepared contained no discussion whatsoever as to why additional alternatives were not considered or not feasible.

In considering, under *Humane Soc'y,* whether the EAs prepared in this case are legally adequate, the Court is compelled to conclude that they are not. It does not appear that NMFS took a "hard look" at the problem with respect to any of the EAs. There is no substantive discussion of how fishing practices and gear may damage corals, disrupt fish habitat, and destroy benthic life that helps support healthy fish populations. Instead, a great deal of the discussion revolves around describing the limited number of proposed alternatives and what the agency's statutory obligations are under NEPA. There is only a minimal or vague discussion of the actual environmental consequences and impacts on the designated EFHs. In several of the EAs, NMFS simply states that no data is available, and therefore it cannot assess the environmental impact. Several EAs merely note that further action is deferred to future amendments.

None of the EAs sufficiently identified relevant areas of concern, as required by the second factor of *Humane Soc'y*. They only discussed fish habitats in general terms, describing the types of EFHs that should be protected, but not specifying which EFHs needed protection and why. None of the EAs convincingly discussed why no significant impact would result from adopting the particular EFH Amendment, as required by the third factor of *Humane Soc'y*; in fact, that conclusion is not justified given the glaring lack of discussion of the possible impact or lack of impact on the EFHs. Finally, under the fourth factor of *Humane Soc'y*, none of the EAs discussed any changes that were considered or made to reduce any possible impact to the environment.

Defendants' EAs are insufficient, and violate the mandates and principles underlying NEPA. Consequently, Plaintiffs' Motion shall be granted, and Federal Defendants' Motion denied, as to this claim. Furthermore, Defendants are ordered to perform a new and thorough EA or EIS as to each EFH Amendment, in compliance with the requirements of NEPA.

### E. Should A Permanent Injunction Be Granted?

"[W]hen an action is being undertaken in violation of NEPA, there is a presumption that injunctive relief should be granted against continuation of the action until the agency brings itself into compliance." *Realty Income Trust v. Eckerd*, 564 F.2d 447, 456 (D.C.Cir.1977); *see also Izaak Walton League of Am. v. Marsh*, 655 F.2d 346, 364 (D.C.Cir.1981) (same). In determining whether injunctive relief is appropriate, the Court must consider whether declining to issue an injunction might cause an "irreversible effect on the environment, until the possible adverse consequences are known ... [The Court should

consider whether] if a NEPA analysis were done, it might 'reveal substantial environmental consequences' which might be critical to further consideration of the propriety of the action." *Realty Income Trust*, 564 F.2d at 456 (internal citations and quotations omitted). If an injunction is in the public interest and would serve a remedial purpose, it should be granted. *Id.*

In this case, the Councils' failure to weigh any alternatives other than adoption of the EFH Amendments or taking no action, prevented the Secretary from considering the possible adverse consequences of adopting the Amendments. Because none of the EFH Amendments recommended that any further protective measures be taken, the two alternatives considered by the Councils were essentially one and the same—that no action be taken. That outcome subverts the very purpose of NEPA, which is to ensure that agencies are fully aware of any adverse environmental effects of their actions, and of all feasible alternatives which may have lesser adverse effects on the environment, so that final decision-making will be informed by a full understanding of relevant environmental impacts. Because the public interest would be served by enjoining the Secretary's actions until such time as he can identify and evaluate all alternatives to the EFH Amendments, this Court will enter an injunction against the enforcement of those Amendments until the Secretary performs a new, thorough, and legally adequate EA or EIS for each EFH Amendment, in compliance with the requirements of NEPA.

### V. Conclusion

For the reasons discussed above, Plaintiffs' Motion for Summary Judgment Against the Federal Defendants [# 22] is **granted in part and denied in part,** the

Federal Defendants' Motion for Summary Judgment [# 27] is **granted in part and denied in part,** Plaintiffs' Motion for Summary Judgment Against the Intervenor–Defendants [# 30] is **granted,** and the Intervenor–Defendants' Motion for Summary Judgment [# 26] is **denied.** An Order will issue with this opinion.