The RAVENSWOOD GROUP and Woodland Development Corp., Plaintiffs,

v.

FAIRMONT ASSOCIATES, Defendant.

No. 88 Civ. 7493.

United States District Court,
S.D. New York.

May 30, 1990.

Steven Kimelman, P.C., New York City, of counsel, for The Ravenswood Group and Woodland Development Corp.

Siller, Wilk, Mencher & Simkin, New York City (Allen G. Reiter, of counsel), for Fairmont Associates.

## OPINION & ORDER

EDELSTEIN, District Judge:

## BACKGROUND

Plaintiff The Ravenswood Group ("Ravenswood") is a New York general partnership consisting of five individuals: W. Todd Parsons, Jonathan L. Parsons, Nicholas T. Parsons, Brook Parsons and Nathaniel T. Parsons. Ravenswood owned certain real property located in Framingham, Massachusetts. On July 9, 1987, Ravenswood entered into an exchange agreement with David LaBreque contemplating a like-kind exchange under § 1031 of the Internal Revenue Code. The transferred property was sold on October 1, 1987.

In order to effectuate a like-kind exchange under § 1031 Ravenswood had to designate an exchange property within 45 days (by November 14, 1987) and close on the purchase within 180 days (by March 29, 1988). On November 14, 1987, Ravenswood designated to an escrow agent seven separate properties as potential exchange properties. Ravenswood's written designation of the exchange properties took the form of seven separate documents, each of which identified one exchange property. Each document stated that the particular property would be acceptable as an exchange property. In the designation documents, Ravenswood failed to prioritize the exchange properties or set forth any factors or contingencies that would dictate

---

**5.** The Court need not address defendant's claim that the action be dismissed under the Act of State doctrine.

which of the exchange properties Ravenswood would choose to purchase, maintaining full discretion to pursue whichever of the seven exchange properties it chose.

One of the properties designated by Ravenswood was Fairmont Estates ("the property"), an apartment complex owned by defendant Fairmont Associates. Subsequently, during December 1987, Ravenswood approached Fairmont concerning a possible sale of the Property to Ravenswood together with another entity. The parties engaged in discussions concerning the proposed sale and exchanged various drafts of a contract of sale. No sale was ever consummated.

Plaintiffs contend that a binding contract of sale was entered with the closing to occur on March 28, 1988. Fairmont disputes that such a contract was ever formed, and this issue must ultimately be determined by the trier of fact.

Ravenswood's partners incurred tax liability of approximately $312,000 on the sale of the transferred property when the contemplated like-kind exchange could not be completed, and Ravenswood seeks to recover this amount from Fairmont as consequential damages. Ravenswood submitted an *in limine* motion asking the court to permit the introduction of expert testimony on § 1031 at trial to prove the nature and extent of its tax damages.

On April 23, 1990, a hearing was conducted and the Court heard testimony from experts with respect to I.R.C. § 1031.

## THE EXPERTS

Richard Sevin testified as an expert for plaintiffs. A non-practicing attorney, Mr. Sevin is employed by American Deferred Exchange Corporation in San Francisco, California, which acts as an accommodating party for like-kind exchanges under § 1031. Mr. Sevin opined that, given the present absence of I.R.S. regulations or rulings, this Court and taxpayers should adhere solely to the language of § 1031, which requires only identification of properties and imposes no limit on the number of properties that may be identified. While conceding that the legislative history, as

expressed in the Conference Report, requires identification of priorities among multiple alternative properties and of contingencies beyond the taxpayer's control that will determine which of the alternative properties is to be purchased, Mr. Sevin believes that it should be ignored in interpreting § 1031 as it applies to the instant case. He believes that legislative history was meant merely to provide guidance to the I.R.S. in connection with promulgating regulations. According to Mr. Sevin, the designation employed by Ravenswood was consistent with practices he has engaged in and seen, and likely would be upheld by the I.R.S. on an audit.

Michael Hirschfeld testified as an expert for defendant. Mr. Hirschfeld is a partner in the New York office of the law firm Winston and Strawn, the author and co-author of numerous articles and a frequent lecturer in the real estate tax field. Mr. Hirschfeld testified that, in the absence of regulations promulgated by the I.R.S., the legislative history of the 1984 amendments to § 1031 should be considered binding on taxpayers and this Court, and that under § 1031, identification of multiple alternative properties requires prioritization, the identification of contingencies beyond the taxpayer's control and designation of a limited number of exchange properties. He testified that his view is consistent with the conclusions reached by the tax periodicals and services he has reviewed and publications by experts in the area, several of which were identified during his testimony. Mr. Hirschfeld concluded that the I.R.S. would be likely to disallow a claim by Ravenswood that it qualified for § 1031 treatment given that it had identified seven properties without prioritizing or identifying any contingencies dictating which property would be selected.

## DISCUSSION

At issue here is whether Ravenswood complied with the requirements of Section 1031(a)(3)(A) of the Internal Revenue Code such that it could have availed itself of the tax deferral available under that section

but for its failure to purchase the Property from Fairmont.

Section 1031(a) of the Internal Revenue Code of 1986 provides that no gain or loss shall be recognized at the time a property held for productive use in a trade or business is sold if the seller performs an exchange of like-kind property. The taxpayer may transfer property and receive the exchange property on a subsequent date only if the requirements set forth in the statute are met.

Under § 1031(a)(3)(A) the requirements that must be satisfied to retain eligibility for § 1031 deferral are:

(a) The property to be received in the exchange is to be identified on or before 45 days after the date on which the relinquished property is transferred; and

(b) The property is received on the earlier of (i) 180 days after the date on which the taxpayer transferred the relinquished property, or (ii) the due date of the taxpayer's return from the taxable year in which the transfer of the relinquished property occurs, such date to be determined with regard to extensions.

The legislative intent underlying § 1031 was that taxpayers should be permitted to avoid present tax liability when exchanging one property for another of like-kind since taxes should not be imposed on a realized gain where the taxpayer maintained a continuity of investment in like-kind property.

In 1984, § 1031 was amended to clarify the circumstances under which a deferred exchange of like-kind property was permissible. The purpose of the 1984 amendments to § 1031 (§ 77 of the Tax Reform Act of 1984 (P.L. 98–369)) was to provide guidance for taxpayers performing deferred exchanges and to render significantly more limited the circumstances in which a deferred exchange could be performed from what had been sanctioned by *Starker v. United States*, 602 F.2d 1341 (9th Cir. 1979). In *Starker*, the Ninth Circuit Court of Appeals held that an exchange of property under § 1031 need not be simultaneous. The 1984 amendments permitted nonsimultaneous exchanges only under certain limited circumstances.

The legislative history from 1984 specifically addresses the mechanics by which the taxpayer may designate multiple alternative properties. The report of the Conference of the United States Senate and House of Representatives (H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 866 (1984), U.S.Code Cong. & Admin.News 1984, pp. 697, 1554, provides in pertinent part as follows:

It is anticipated that the designation requirement will be satisfied if the contract between the parties specifies a limited number of properties that may be transferred and the particular property to be transferred will be determined by contingencies beyond the control of both parties. For example, if A transferred real estate in exchange for a promise by B to transfer Property 1 to A if zoning changes are approved and Property 2 if they are not, the exchange would qualify for like-kind treatment.

The General Explanation of the Revenue Provisions of the Deficit Reductions Act of 1984, prepared by the staff of the Congressional Joint Committee on Taxation (U.S. Government Printing Office 1985), (commonly referred to as the "Blue Book"), is in accord:

[P]roperty which was not identified as the property to be received by the taxpayer on the date the transferred property was relinquished or within 45 days after that date will not qualify as like-kind property ... The designation requirement may be satisfied if the contract between the parties specifies a limited number of properties that may be transferred and the particular property to be transferred is to be determined by contingencies beyond the control of both parties. For example, if A transferred real estate in exchange for a promise by B to transfer property 1 to A if zoning exchanges are approved and property 2 if they are not, the exchange will qualify for like-kind treatment.

There have been no reported court decisions or revenue rulings by the Internal Revenue Service concerning the pertinent sections of § 1031 addressed to the require-

ments for designating multiple alternative properties. As far as the court is aware, this is a case of first impression.

Before May, 1990, no regulations had been issued by the Commissioner of Internal Revenue under the pertinent subsections of § 1031. On May 16, 1990, the I.R.S. issued proposed regulations to govern like-kind exchanges under § 1031. Although the court has reviewed and considered the proposed regulations, it should be noted that they are of no persuasive value in this instance: "It goes without saying that a proposed regulation does not represent an agency's considered interpretation of its statute and that an agency is entitled to consider alternative interpretations before settling on the view it considers most sound." *CFTC v. Schor*, 478 U.S. 833, 845, 106 S.Ct. 3245, 3253, 92 L.Ed.2d 675 (1986). Moreover, these proposed regulations are prospective only and are subject to change in the rule-making process.

Plaintiffs' identification of multiple alternative exchange properties would not have complied with the proposed regulations which require a designation of a maximum of three properties. In reaching its conclusion, however, the court relies on the information available to the parties at the time the exchange was contemplated and that which was presented during the hearing held on April 23, 1990.

The commentators addressing the pertinent subsections of § 1031 uniformly have adhered to the legislative history as controlling authority as to the manner in which multiple alternative designations may be made and that only a limited number of alternative properties might be designated, with an outside limit of five properties. See Levine, "Taxfree Exchanges Under Section 1031," BNA Tax Management Portfolio 61–5th (1987); CCH Standard Federal Tax Report ¶ 4606.013, Explanation at p. 55,021; RIA Federal Tax Coordinator 2d ¶ I–2835 (1990); RIA Federal Tax Coordinator 2d, Special Study "Tax Planning for Like–Kind Exchanges," ¶ 702 (April 26, 1990); Wasserman, "Mr. Mogul's Perpetual Search for Tax Deferral: Techniques and Questions involving Section 1031 Like-kind Exchanges In a World of Changing Tax Alternatives," 65 Taxes 975 (December 1987); American Bar Association Section on Taxation, "Proposed Regulations Under Section 1031 Relating to Exchange of Partnership Interests and Delayed Exchanges" (March 17, 1990).

This Court is bound to follow the expressed legislative intention that the 1984 amendments were intended to restrict the flexibility theretofore available under § 1031 as interpreted by the courts. This court concludes that, in this instance, the 1984 legislative history applies and is controlling as to the manner in which designations of multiple alternative exchange properties may be made.

As a result of Ravenswood's designation of seven separate properties as possible exchange properties, Ravenswood would not have qualified under § 1031(a)(3)(A) for tax deferral as a like-kind exchange had it timely closed on its purchase of the Property because:

(i) Ravenswood designated such a large number of separate exchange properties.

(ii) Ravenswood did not set forth the priorities as to which of the exchange properties would be purchased in the first instance and as alternatives if the prior preference proved to be unavailable.

(iii) Ravenswood did not bind itself to contingencies beyond its control that would determine which of the exchange properties was to be purchased and did not identify such contingencies in writing.

Since Ravenswood would not have qualified for tax deferral under § 1031 because of its failure to comply with I.R.C. § 1031(a)(3)(A), Ravenswood cannot recover, as consequential damages, the tax liability incurred by its partners on the sale of the Transferred Property.

Accordingly, plaintiffs' *in limine* motion is denied.

SO ORDERED.